UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Nathan Craig McGuire,<br><br>Plaintiff,<br><br>vs.<br><br>Independent School District No. 833,<br>Julie A. Bowlin, and Thomas M. Bowlin,<br><br>Defendants. | Court File No.:<br>Judge:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

For his Complaint, Plaintiff Nathan McGuire ("McGuire") states as follows:

## JURISDICTION

1.     This is an action for money damages and injunctive relief arising out of the unconstitutional actions of Defendant Independent School District No. 833 in declining to renew McGuire's contract to coach the varsity girls' basketball team at Woodbury High School solely because of the existence of parent complaints, and doing so without providing McGuire the pre-deprivation and post-deprivation process to which he was entitled.

2.     McGuire is also seeking damages against Independent School District No. 833 for violation of the Minnesota Government Data Practices Act, Minn. Stat. § 13.01 *et seq.*

3.     Further, McGuire seeks damages against Defendants Julie and Thomas Bowlin, who made defamatory statements to, among others, Woodbury High School, ISD No. 833, the investigator hired by Independent School District No. 833, the Minnesota

State High School League, and individual members of the community.

4.     McGuire also seeks damages against Defendants Julie and Thomas Bowlin for knowingly or recklessly making a false report under the Maltreatment of Minors Reporting Act, Minn. Stat. § 626.556.

5.     McGuire brings this action under the Fourteenth Amendment to the United States Constitution, as enforced pursuant to 42 U.S.C. §§ 1983 and 1988, and pursuant to 28 U.S.C. §§ 1331 and 1343, and Minn. Stat. § 122A.33.   Those statutory and constitutional provisions provide this Court original jurisdiction over this matter.

6.     This Court has supplemental jurisdiction over McGuire's state law claims against Defendants Julie and Thomas Bowlin for defamation and making a malicious and reckless report under the Maltreatment of Minors Reporting Act, Minn. Stat. § 626.556, pursuant to 28 U.S.C. § 1367(a) because those claims are so related to his civil rights claims, over which this Court has original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution, and judicial economy, convenience, and fairness to the parties named herein will result through this Court's exercise of supplemental jurisdiction over those claims.

7.     Plaintiff Nathan McGuire brings these actions not only for money damages, but also for the purpose of obtaining injunctive relief reinstating him to his position as varsity girls' basketball coach at Woodbury High School.

**PARTIES**

8.     Plaintiff Nathan McGuire, at all material times herein, is a citizen of the United States and a resident of the State of Minnesota.

2

9.      Independent School District No. 833 ("ISD No. 833") is a public school district organized and operated under the laws of the State of Minnesota.

10.     Woodbury High School is a public high school and is a member of ISD No. 833.

11.     The South Washington County School Board is a seven-member non-profit entity charged with governing, managing, and controlling ISD No. 833 and the interests of its member schools, including Woodbury High School.

12.     Defendant Julie Bowlin, at all material times herein, is a citizen of the United States and a resident of the State of Minnesota.

13.     Defendant Thomas Bowlin, at all material times herein, is a citizen of the United States and a resident of the State of Minnesota.

14.     This Court has personal jurisdiction over all Defendants and venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because all of the Defendants reside here and a substantial part of the events or omissions giving rise to the claims alleged by McGuire occurred here.

## FACTS

## I.    GENERAL BACKGROUND.

15.     Nathan McGuire is 39 years old and has been married to his wife, Lynn, for 14 years.  Nathan and Lynn have three young children, ages 8 to 10.

16.     In the fall of 2012, McGuire was hired by ISD No. 833 as the varsity girls' basketball coach at Woodbury High School.

17.     Prior to accepting the coaching contract at Woodbury High School,

McGuire worked as a kindergarten teacher and junior high track coach in ISD No. 833 since approximately 1999. To this day, McGuire is still working as a kindergarten teacher at Armstrong Elementary School, a public elementary school that is also in ISD No. 833.

18.     McGuire has a bachelor's degree in elementary education from the University of Minnesota-Duluth and received his master's degree in education from Southwest State University.

19.     McGuire began his career coaching girls' high school basketball in 2004 as the girls' basketball coach at the Minnesota Business Academy, a business charter school formerly located in St. Paul, Minnesota. In his first season as a coach, the Minnesota Business Academy won a share of the conference title.

20.     In 2008, McGuire was hired as the varsity girls' basketball coach at Henry Sibley High School. He remained there for two seasons.

21.     In 2010, McGuire became the varsity girls' basketball coach at the Academy of Holy Angels, where he remained for two years before accepting the coaching position at Woodbury High School.

22.     During the 2011-2012 season, the year before McGuire took over the program, the Woodbury High School varsity girls' basketball team finished the season with a 10-18 record.

23.     During the 2012-2013 season, McGuire's first season as head coach at Woodbury High School, the team compiled a record of 19-10, finished third in their conference, and finished as runners up in their section tournament, missing the state

4

tournament by only one game.

## II.    2013-2014 SEASON.

### A.    BOWLINS BRING COMPLAINTS BEFORE SEASON EVEN STARTS.

24.     "Minor Player A" was a player on the varsity girls' basketball team that McGuire coached at the Academy of Holy Angels during the 2011-2012 season.

25.     In the summer of 2013, McGuire received confirmation that Minor Player A would be transferring to Woodbury High School and was interested in playing basketball. Minor Player A subsequently enrolled at Woodbury High School in the ninth grade during the 2013-2014 season.

26.     In November of 2013, before any games had been played in the 2013-2014 season and following a scrimmage against Como Park Senior High School, McGuire was requested to attend a meeting that was arranged by Minor Player A's parents, Defendants Julie Bowlin and Thomas Bowlin. Also present at that meeting were Linda Plante, the principal at Woodbury High School ("Plante"); Jason Gonnion, the activities director at Woodbury High School ("Gonnion"); Kerry Daly and Mark Obarski, McGuire's assistant coaches on the Woodbury High School girls' basketball team; and Minor Player A. During that meeting, Defendants Julie and Thomas Bowlin repeatedly requested a "status update" on Minor Player A, including whether Minor Player A would make the varsity roster, whether she would be in the starting lineup for the varsity team, and how much playing time she would receive as a varsity player. This meeting was scheduled, and these complaints were made, even though the coaching staff had not yet decided which players would be selected for the varsity roster and even though no competitive games

5

had been played yet that season.

27.     At that meeting, McGuire stated to Defendants Julie and Thomas Bowlin several times that he did not know how much playing time Minor Player A would receive.  He observed that this did not ease their concerns and the Bowlins continued to raise complaints about Minor Player A's playing time and her "status" on the team.

28.     At approximately the same time as that meeting, Defendants Julie and Thomas Bowlin arranged another separate meeting with Kevin Kieger, a parent of a player on the Woodbury High School team and an influential parent in the program.  At that meeting, Defendants Julie and Thomas Bowlin stated that they were concerned about Minor Player A's status on the team under McGuire.  Kieger interpreted the contents and tone of the meeting to be about Minor Player A's playing time.  Defendant Julie Bowlin stated during that meeting that either McGuire is removed as coach or Minor Player A would leave the program.

29.     Following this meeting, Kieger was left with the impression that Defendants Julie and Thomas Bowlin were dissatisfied with Minor Player A's playing time and would attempt to have McGuire removed as the head coach as a result.

30.     On information and belief, following both of those meetings, Defendants Julie and Thomas Bowlin contacted the Minnesota State High School League ("MSHSL") in order to raise additional complaints about McGuire and were informed by the MSHSL that they would need to bring their complaint with Woodbury High School per MSHSL policies.

31.     On information and belief, Defendants Julie and Thomas Bowlin contacted

Woodbury High School and demanded that they remove McGuire as the girls' basketball coach.

32.     On information and belief, Defendants Julie and Thomas Bowlin also contacted ISD No. 833 administration and demanded that they remove McGuire as the girls' basketball coach.

33.     After the meeting with the Woodbury High School coaches and administration, Minor Player A attended one more practice.  After that practice, and within approximately one week, McGuire was informed that Minor Player A would no longer be playing for the Woodbury High School girls' basketball team.  Minor Player A subsequently transferred to another high school.

34.     After the decision had been made for Minor Player A to transfer, Defendant Julie Bowlin contacted at least one individual and informed him that she was going to "take down Nathan McGuire."  That individual was left with the impression that Defendant Julie Bowlin would do everything in her power to have McGuire removed as the coach.

35.     Although Minor Player A was no longer a player on the Woodbury High School girls' basketball team, on information and belief Defendants Julie and Thomas Bowlin continued to make complaints to the administration of Woodbury High School, and to ISD No. 833 administration, with the intended goal of having McGuire removed as coach.

### B. INITIAL INVESTIGATION OF MCGUIRE RESULTS IN NO DISCIPLINARY ACTION.

36.     In early January of 2014, several players on the Woodbury High School girls' basketball team were contacted by Plante, the Woodbury High School principal, and asked to have one-on-one conversations in Plante's office.

37.     During these meetings, Plante asked the girls about how McGuire ran practice, how he treated his players, and generally inquired about his coaching practices.

38.     McGuire was not notified that these meetings were taking place, nor has he been given any reason for Woodbury High School performing any investigation of him at that time.

39.     On information and belief, ISD No. 833 initiated these meetings solely because of complaints from Defendants Julie and Thomas Bowlin about McGuire.

40.     Woodbury High School did not take any action as a result of these meetings, and McGuire was permitted to coach the team during its next game against East Ridge High School on January 3, 2014.

41.     As of January 3, 2014, the Woodbury High School varsity girls' basketball team had a record of 5-4, including a win against Washburn High School, which had one of the best teams in the State of Minnesota during the 2013-2014 season.

### C. FIVE DAYS LATER, MCGUIRE PLACED ON NON-DISCIPLINARY LEAVE.

42.     Five days later, before his team's game against Forest Lake High School on January 8, 2014, McGuire was notified by Linda Plante that he was being placed on non-disciplinary leave and would not be permitted to coach the team until further notice. Also

8

present for this conversation were Jason Gonnion, the Woodbury High School activities director, and Todd Huber, the Woodbury High School assistant principal. McGuire was instructed during this conversation not to have any further contact with players on the team or his coaches.

43.    On information and belief, ISD No. 833 placed McGuire on non-disciplinary leave solely because of complaints from Defendants Julie and Thomas Bowlin, including additional complaints made after January 3, 2014.

44.    McGuire was formally notified of this non-disciplinary leave by letter from Plante dated January 8, 2014, which stated that McGuire had been placed on administrative paid leave pending the outcome of an investigation into allegations against him.  In that letter, McGuire was told that he would be interviewed as part of the investigation and that he would receive further notice of the allegations against him and a basic description of any evidence in support of the allegations.  McGuire was also told that he would have an opportunity to respond to the allegations against him.

45.    ISD No. 833, as the governing school district, is liable for the actions and conduct of Plante and Gonnion, whose actions and conduct were on behalf of ISD No. 833.

46.    McGuire did not receive any hearing prior to being placed on leave, he was not informed of any reason why he was placed on leave, and he was neither informed of nor asked to respond to any allegation against him.

**D.    ISD NO. 833'S INVESTIGATION OF MCGUIRE.**

47.    After placing McGuire on non-disciplinary leave, ISD No. 833 retained a

law firm to perform an investigation into the parent complaints about McGuire.

48.     An attorney from that law firm scheduled meetings with all players on the Woodbury High School girls' basketball team, as well as assistant coaches Kerry Daly and Mark Obarski.

49.     During these meetings, which were arranged on short notice and which the players' parents were only reluctantly permitted to attend, the attorney asked the players and coaches a number of leading questions designed to build a case against McGuire returning as coach.

50.     On information and belief, Defendants Julie and Thomas Bowlin were among the persons interviewed by the attorney, and the primary case to remove McGuire as coach was built through their interviews.

51.     On information and belief, ISD No. 833 determined, solely on the basis of parent complaints, that it would not renew McGuire's coaching contract before it even interviewed McGuire regarding the allegations against him.

### E.     INTERVIEW OF NATHAN MCGUIRE.

52.     On January 28, 2014, at the direction of ISD No. 833, McGuire attended an interview conducted by the attorney.

53.     At no time prior to, during, or after this meeting was McGuire informed by Woodbury High School, ISD No. 833, or the attorney why he had been placed on non-disciplinary leave, what would be discussed at that interview, what allegations had been raised against McGuire, or given any description of any evidence in support of the allegations.

54.     During this interview, McGuire was confronted with a series of bizarre and irrelevant questions relating to his coaching and personal life, many of which related to events that did not happen or that were presented in a biased or otherwise fictional manner.

55.     None of the questions posed to McGuire provided him with any understanding of why he was removed as the coach of the Woodbury High School girls' basketball team. He has never been provided with any factual basis for the removal. On information and belief, the questions were not designed to investigate the allegations against McGuire or to provide him with an opportunity to confront the allegations against him, but rather were designed to build a case against McGuire in order to remove him as the girls' basketball coach.

56.     At no point has McGuire been informed of the allegations against him, the identity of the individuals who made any such allegations, or the evidence supporting those allegations.

57.     Based upon the attorney's conversations with players, parents, coaches, and McGuire, the attorney, on information and belief, drafted and provided to ISD No. 833 an investigation report.

58.     To date, despite McGuire's requests, ISD No. 833 has refused to provide any portion of this investigation report to McGuire, has refused even to provide a redacted report, and has refused to provide a summary of the report.

59.     On information and belief, the findings and conclusions of the investigation report showed that the statements made by Defendants Julie and Thomas Bowlin to ISD

11

No. 833 and its attorney were false or otherwise unsupported by the facts.

**F.   DESPITE EXONERATING MCGUIRE, ISD NO. 833 STILL EXTENDS HIS LEAVE UNTIL END OF SEASON.**

60.   Following the completion of the investigation report, ISD No. 833 determined that McGuire would remain on leave through the end of the 2013-2014 season.

61.   On January 31, 2014, Plante sent McGuire a letter informing him that his leave would continue through the end of the 2013-2014 girls' basketball season. No reason was given for this decision.

62.   At all relevant times, McGuire has been permitted to continue teaching kindergarten in ISD No. 833.

63.   After McGuire was removed as head coach, the Woodbury High School varsity girls' basketball team finished the season by losing 17 of their next 18 games. At least nine of those losses were by ten points or more and at least two of those losses were to teams that Woodbury High School had defeated earlier in the season while McGuire was still the head coach.

**G.   AFTER SEASON, ISD NO. 833 NON-RENEWS MCGUIRE'S CONTRACT.**

64.   Shortly after the team's season ended, McGuire was informed by ISD No. 833 that his contract to coach the girls' basketball team would not be renewed.

65.   On March 14, 2014, McGuire received a letter from Plante documenting the non-renewal of his contract. On information and belief, the bare assertion in the letter that the decision not to renew McGuire's contract "is based on the results of a recent

investigation and is not based solely on parent complaints" is false.

66. To the contrary, on information and belief, ISD No. 833 based its decision solely on parent complaints.

67. In addition, the supposed reasons given in the March 14, 2014 letter for the non-renewal of McGuire's contract are so vague as to lack meaning, are false, are unsupported by the findings of the investigation, and provide insufficient information to permit McGuire to know what allegations were made against him and why his contract was not renewed, including the generic and unsupported assertions that McGuire "failed to meet the administration's expectations"; that the administration "would like the Woodbury Girls' Basketball program to move in a different direction"; and that McGuire's "leadership style, coaching philosophy, conduct, and coaching methods differ from the leadership style, coaching philosophy, conduct, and coaching methods that are desired by the administration."

68. Despite the assurances made by ISD No. 833 in its January 8, 2014 letter, at no time has McGuire received notice of the allegations against him, any description of the evidence in support of those allegations, or any opportunity to respond to those allegations.

### III.   McGuire Requests Hearing to Contest Dismissal.

#### A.   McGuire Requests Hearing Before School Board.

69. After receiving notice that his contract would not be renewed, in April of 2014 McGuire requested a hearing before the South Washington County School Board, which governs ISD No. 833 and Woodbury High School. Because the nonrenewal was,

on information and belief, based solely on parent complaints, McGuire was entitled to a hearing.

70.     The attorney for ISD No. 833 informed McGuire that he was not entitled to an evidentiary hearing and that, although he would receive an opportunity to address the members of the School Board and explain why he believes his contract should have been renewed, McGuire would not receive a formal hearing.

71.     Prior to his appearance before the School Board, and despite requests, McGuire was not provided with a copy of the investigation report (redacted or unredacted), nor with a summary of the investigation report, nor with any information regarding the allegations against him, nor with information regarding what evidence the School District considered in deciding not to renew his contract.

72.     Before McGuire was even given a hearing, a chance to respond to ISD No. 833's decision not to renew his coaching contract, or an opportunity to present evidence, the School Board, at the March 6, 2014 School Board meeting and by its consent agenda, approved the retirement, resignation, and termination of sixteen individuals, including McGuire as varsity coach.  These consent items were declared to be routine and non-controversial by the School Board and were approved by a single motion without any discussion.  The School Board approved the consent agenda items at the March 6 meeting, including the non-renewal of McGuire's coaching contract, without information about the basis for his termination, without information that McGuire did not want his coaching contract terminated, and without any information relating to the circumstances of his non-renewal.

**B.    MAY 8, 2014 BOARD MEETING.**

73.    On May 8, 2014, McGuire was given the opportunity to address the School Board and made a statement regarding why he felt the reasons for nonrenewal were unjustified and unsupported by the facts.

74.    To support his position, McGuire presented the School Board with 19 statements from Woodbury High School girls' basketball players, parents, and coaches supporting McGuire and stating that the most credible explanation for the non-renewal of McGuire's contract was due solely to parent complaints.

75.    After McGuire's statement was made, at least one School Board member asked the School Board if they could take action and give McGuire his job back.  That School Board member also requested to review the investigation report, but was not permitted to do so.  Although ISD No. 833 allowed McGuire to remain in the room during this discussion, it has subsequently refused, despite request, to produce to McGuire any audio recording of the conversation that took place.

76.    A statement was read by Board Chair Ron Kath stating that the School Board was not obligated to take any action.  Accordingly, despite the objection of at least one member, the School Board simply declared the session to be over and did not take any action on McGuire's objections.

**IV.    BOWLINS FILE FALSE COMPLAINT WITH MINNESOTA DEPARTMENT OF EDUCATION.**

77.    On information and belief, in January of 2014, Defendants Julie and Thomas Bowlin filed a complaint with the Minnesota Department of Education alleging

that McGuire was responsible for the emotional or mental maltreatment of Minor Player A.

78.     On information and belief, Defendants Julie and Thomas Bowlins' allegations forming the basis for that complaint were the same or similar to their allegations forming the basis for their complaint brought to ISD No. 833. In fact McGuire was never a teacher for a class that Minor Player A attended; therefore, the complaint filed by the Bowlins necessarily consisted solely of complaints about McGuire's coaching of the varsity girls' basketball team at Woodbury High School.

79.     On information and belief, the complaint filed by Defendants Julie and Thomas Bowlin constitutes a false report to the Minnesota Department of Education because the information provided to the Minnesota Department of Education was incendiary, malicious, false, fictitious, and was knowingly or recklessly made with the intended result of causing McGuire to lose his teaching and/or coaching license in the State of Minnesota.

80.     On or about September 12, 2014, relating to the complaint filed by the Bowlins, Vicky Anderson, Senior Maltreatment Investigator with the Minnesota Department of Education, sent McGuire a letter via U.S. Mail informing him that he would be investigated for emotional or mental maltreatment.

81.     On September 22, 2014, McGuire participated in an interview conducted by Ms. Anderson. At that interview, McGuire was asked many of the same bizarre questions relating to his coaching and personal life as he was asked at the interview conducted by ISD No. 833, many of which related to events that did not happen or that

16

to interview for those openings, and was told by one of those high schools that McGuire was the preferred candidate and that if he did not receive the job, it would be due to his non-renewal by Woodbury High School and the complaint pending at that time brought by Defendants Julie and Thomas Bowlin to the Minnesota Department of Education.

88.    On information and belief, ISD No. 833 did not respond to a phone call from at least one of those two high schools, and thus declined to provide any information to those schools about McGuire's non-renewal or about the complaints brought by Defendants Julie and Thomas Bowlin.

89.    As a result of ISD No. 833 and Defendants Julie and Thomas Bowlin's conduct, McGuire did not receive a job offer from either of those two high schools.

90.    In or about October of 2014, after unsuccessfully applying for head coaching positions, McGuire inquired about an opening to serve as a scout for the varsity girls' basketball team at a local high school.

91.    Despite being obviously and categorically overqualified for a scouting position, McGuire was not even offered *that* position, and has been unable to obtain any employment as a varsity or junior varsity girls' basketball coach in Minnesota as a result of the actions of Defendants Julie and Thomas Bowlin and ISD No. 833.

92.    ISD No. 833's statements to the public damaged McGuire's reputation and violated his liberty interest guaranteed to him by the United States Constitution.

93.    ISD No. 833's conduct also violated McGuire's property interest, as created under Minnesota law, to the continuation of his coaching contract because of complaints raised by Defendants Julie and Thomas Bowlin – parents of a player coached by

18

McGuire.

94.     Further, ISD No. 833 has violated the Minnesota Government Data Practices Act by refusing to provide public data to McGuire, refusing to disclose public data to potential employers, refusing to disclose properly requested data of which McGuire is the subject, regardless of whether that data is public, and it has injured McGuire by eviscerating his ability to apply for and obtain future coaching positions.

95.     As a direct and proximate cause of the illegal conduct of ISD No. 833 and Defendants Julie and Thomas Bowlin, McGuire suffered mental anguish, damage to his reputation, and suffered adverse consequences socially and professionally.

96.     At all relevant times, ISD No. 833 was acting under color of law.

**COUNT ONE**
**FOURTEENTH AMENDMENT VIOLATIONS**
**42 U.S.C. § 1983**
**(AGAINST INDEPENDENT SCHOOL DISTRICT NO. 833)**

97.     McGuire realleges and incorporates by reference herein the foregoing allegations as though fully set forth herein.

98.     McGuire has a property interest in employment as the girls' basketball coach at Woodbury High School, a public entity, which is protected by the Fourteenth Amendment to the United States Constitution.

99.     At a minimum, due process requires that a deprivation of property be preceded by notice and a meaningful opportunity to be heard, appropriate to the nature of the case and the deprivation.

100.     Minnesota Statutes §§ 122A.33, subd. 3 and 122A.58 create a state law-

created property interest, protected by the Fourteenth Amendment to the United States Constitution, in a coaching contract's renewal where that contract is not renewed on the sole basis of the existence of parent complaints.

101.   Solely because of the existence of parent complaints, and contrary to Minnesota law and the Fourteenth Amendment to the United States Constitution, ISD No. 833 did not renew McGuire's coaching contract.

102.   McGuire was also deprived of a meaningful opportunity to be heard to contest the non-renewal of his coaching contract.

103.   In doing so, ISD No. 833 deprived McGuire of the following clearly established and well settled federal constitutional rights of McGuire, all of which were his right because the non-renewal was based solely on parent complaints:

   a.   Right to be provided with notice of the allegations against him;

   b.   Right to be shown an articulated and non-vague standard of conduct which he is accused of violating;

   c.   Right to be provided with an opportunity to rebut the charges against him in a meaningful way and at a meaningful time;

   d.   Right to be confronted with evidence supporting any allegations against him;

   e.   Right to pre-deprivation and/or post-deprivation hearings;

   f.   Right to cross-examine witnesses who raised allegations against him; and

   g.   Right to be present when adverse evidence is presented to the fact-

finder.

104.    The foregoing conduct by I.S.D. No. 833 was intentional, was made under color of law, and constitutes a violation of the Fourteenth Amendment to the United States Constitution, as implemented by 42 U.S.C. § 1983.

105.    On information and belief, the foregoing conduct by I.S.D. No. 833 is pursuant to policy, practice, or custom which, as a result, deprives individuals such as Nathan McGuire of their above-identified constitutional rights.

106.    As a direct and proximate cause of ISD No. 833's conduct, Plaintiff Nathan McGuire suffered mental anguish, damage to his reputation, and suffered adverse consequences socially and professionally.

107.    McGuire is entitled to recovery of his costs, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988.

## COUNT TWO
## VIOLATION OF MINNESOTA GOVERNMENT DATA PRACTICES ACT
## MINN. STAT. § 13.01 *et seq.*
## (AGAINST DEFENDANT INDEPENDENT SCHOOL DISTRICT NO. 833)

108.    McGuire realleges and incorporates by reference herein the foregoing allegations as though fully set forth herein.

109.    At all material times, ISD No. 833 was acting under color of law.

110.    Minnesota's Government Data Practices Act, Minn. Stat. § 13.01 *et seq.* (the "Data Practices Act"), governs requests for access to government data and requires generally that individuals be permitted to inspect and copy public government data.

111.    The investigation report prepared by ISD No. 833's attorney from the

investigation of McGuire constitutes either public data or at a minimum private data on McGuire.

112.   Despite a proper request made by McGuire under the Data Practices Act, ISD No. 833 refused to produce that document to McGuire in willful violation of the statute.

113.   At a minimum, ISD No. 833 was obligated to redact nonpublic data that would identify other subjects of the investigation whose data is nonpublic and produce as much of the report as possible, or to produce a summary of the report.  However, falsely claiming that the confidential information was inseparably intertwined with the investigation report, ISD No. 833 willfully and illegally refused to produce any of the requested public data to McGuire.

114.   In addition, McGuire is entitled under the Data Practices Act to review the audio tape for the portions of the School Board meeting on May 8, 2014 at which he was present.   This information constitutes public data, or at a minimum data of which McGuire is the subject; was created by ISD No. 833; and is in their sole possession and control.

115.   Despite a proper request made by McGuire under the Data Practices Act, ISD No. 833 willfully refused to produce that document to McGuire in violation of the statute.

116.   McGuire was damaged and suffered mental anguish, damage to his reputation, and adverse consequences socially and professionally as a result of these violations of the Data Practices Act.

117. Furthermore, ISD No. 833's violation of the Data Practices Act, including its willful refusal to disclose to McGuire the outcome of the investigation or provide any information whatsoever regarding the investigation to McGuire's potential future employers, caused concrete and tangible injury to McGuire's future job prospects.

118. McGuire is entitled to recovery of damages sustained, costs, reasonable attorneys' fees, and exemplary damages pursuant to Minn. Stat. § 13.08, subd. 1.

## COUNT THREE
### DEFAMATION
### (AGAINST DEFENDANTS JULIE AND THOMAS BOWLIN)

119. McGuire realleges and incorporates by reference herein the foregoing allegations as though fully set forth herein.

120. Defendants Julie and Thomas Bowlin made statements to, among others, Woodbury High School, ISD No. 833, the ISD No. 833's attorney who investigated McGuire, the Minnesota State High School League, and, on information and belief, to other individuals in the community.

121. On information and belief, the defamatory statements made by Defendants Julie and Thomas Bowlin consisted of statements that have no basis in fact and that cast McGuire's personal and professional life in a false light including, *inter alia*, that on at least one occasion, Defendant Julie Bowlin stated to an individual that McGuire had been arrested relating to the allegations at Woodbury High School. This statement is completely and undeniably false. Defendants Julie and Thomas Bowlin also made numerous specific statements to the individuals and entities identified in the immediately preceding paragraph stating that McGuire had engaged in personal and professional

misconduct.

122.   Those statements were intentionally false, tended to injure McGuire's reputation, lowered him in the estimation of the community, and exposed McGuire to public contempt and degradation.

123.   Defendants Julie and Thomas Bowlin were negligent in the publication of these statements because they knew, or in the exercise of reasonable care should have known, that the statements were false.

124.   On information and belief, those statements inherently and negatively affected McGuire's reputation relating to his business or profession and, therefore, constitute *per se* defamation.

125.   McGuire's reputation was damaged as a result of those statements.

126.   McGuire was injured as a result of those statements in an amount to be determined at trial.

## COUNT FOUR
## VIOLATION OF MINNESOTA MALTREATMENT OF MINORS REPORTING ACT
## MINN. STAT. § 626.556
## (AGAINST DEFENDANTS JULIE BOWLIN AND THOMAS BOWLIN)

127.   McGuire realleges and incorporates by reference herein the foregoing allegations as though fully set forth herein.

128.   On information and belief, Defendants Julie and Thomas Bowlin filed at least one complaint with the Minnesota Department of Education, pursuant to Minn. Stat. § 626.556, alleging that McGuire was culpable for mental or emotional maltreatment of Minor Player A.

129.   On information and belief, this complaint was based upon false or misleading facts, was made despite the absence of facts showing that McGuire had in fact mentally or emotionally maltreated Minor Player A, and was knowingly or recklessly made with the purpose of causing McGuire to lose his license to teach or coach in the State of Minnesota.

130.   Accordingly, the complaint filed by Defendants Julie and Thomas Bowlin constitutes a false report.

131.   Under Minnesota Statutes Section 626.556, subd. 5, any persons who knowingly or recklessly make a false report under the Maltreatment of Minors Reporting Act are liable in a civil suit for actual damages suffered by the reported person, for punitive damages, and for costs and reasonable attorney fees.

132.   McGuire was damaged by the filing of a false complaint by Defendants Julie and Thomas Bowlin in an amount to be proven at trial.

### **PRAYER FOR RELIEF**

WHEREFORE, McGuire respectfully requests that this Court:

A.   Enter judgment in favor of McGuire and against Defendants;

B.   Enter an order declaring the conduct of Independent School District No. 833 to be unconstitutional and, as to Count One, for compensatory damages in an amount to be determined by a jury;

C.   Enter an order declaring the conduct of Independent School District No. 833 to be contrary to the law, willful, and, as to Count Two, for recovery of damages sustained and exemplary damages pursuant to Minn. Stat. § 13.08, subd. 1;

D. Enter an order declaring the conduct of Defendants Julie Bowlin and Thomas Bowlin to be contrary to the law and, as to Counts Three and Four, for compensatory damages in an amount to be determined by a jury;

E. Enter an order mandating that Plaintiff Nathan McGuire be reinstated as the varsity girls' basketball coach at Woodbury High School;

F. Enter an award against Defendants Julie Bowlin and Thomas Bowlin for actual damages suffered by McGuire in an amount to be proven at trial, and awarding McGuire punitive damages against Defendants Julie Bowlin and Thomas Bowlin related to the making of a false report under the Minnesota Maltreatment of Minors Reporting Act;

G. Award McGuire his reasonable attorneys' fees, costs, and prejudgment interest pursuant to 42 U.S.C. § 1988; Minn. Stat. § 13.08, subd. 1; Minn. Stat. § 626.556, subd. 5; and any other applicable provisions of law; and

H. Grant McGuire such other and further relief as may be just and proper under the circumstances.

### JURY TRIAL DEMAND

Plaintiff Nathan McGuire demands a jury trial as to all claims so triable.

FAFINSKI MARK & JOHNSON, P.A.

Dated: December **11**, 2014

By: 

Donald Chance Mark, Jr. (#67659)
Andrew T. James (#0390982)
Flagship Corporate Center
775 Prairie Center Drive, Suite 400
Eden Prairie, MN 55344
Phone (952) 995-9500
Fax (952) 995-9577
donald.mark@fmjlaw.com
andrew.james@fmjlaw.com

*Attorneys for Plaintiff Nathan McGuire*