UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Nathan C. McGuire, | Case No. 0:14-CV-04980 RHK/SER |
| Plaintiff, | |
| v. | |
| Independent School District No. 833; Keith Jacobus, in his individual and official capacities; Denise Griffith, in her individual and official capacities; Julie A. Bowlin; Thomas M. Bowlin; Joy M. Szondy; and Chelon L. Danielson, | **SECOND AMENDED COMPLAINT** **JURY TRIAL DEMANDED** |
| Defendants. | |

For his Complaint, Plaintiff Nathan McGuire ("McGuire") states as follows:

## JURISDICTION

1.      This is an action for money damages and injunctive relief arising out of the unconstitutional actions of Defendant Independent School District No. 833 in declining to renew McGuire's contract to coach the varsity girls' basketball team at Woodbury High School solely because of the existence of parent complaints, and doing so without providing McGuire the pre-deprivation and post-deprivation process to which he was entitled.

2.      McGuire further seeks damages against Defendants Keith Jacobus and Denise Griffith, in their individual and official capacities, for declining to renew McGuire's coaching contract solely because of the existence of parent complaints, and for doing so without providing McGuire the pre-deprivation and post-deprivation process to which he was entitled.

3.     McGuire is also seeking damages against Independent School District No. 833 for violation of the Minnesota Government Data Practices Act, Minn. Stat. § 13.01 *et seq.*

4.     Further, McGuire seeks damages against Defendants Julie and Thomas Bowlin, Joy Szondy, and Chelon Danielson, who made defamatory statements to, among others, Woodbury High School, ISD No. 833, the investigator hired by Independent School District No. 833, the Minnesota State High School League, and individual members of the community.

5.     McGuire also seeks damages against Defendants Julie and Thomas Bowlin, Joy Szondy, and Chelon Danielson for knowingly or recklessly making false reports under the Maltreatment of Minors Reporting Act, Minn. Stat. § 626.556.

6.     McGuire further seeks damages against Defendants Julie and Thomas Bowlin, Joy Szondy, and Chelon Danielson for civil conspiracy to defame McGuire and to make false reports with the Minnesota Department of Education, causing injury to McGuire.

7.     McGuire brings this action under the Fourteenth Amendment to the United States Constitution, as enforced pursuant to 42 U.S.C. §§ 1983 and 1988, and pursuant to 28 U.S.C. §§ 1331 and 1343, and Minn. Stat. § 122A.33.   Those statutory and constitutional provisions provide this Court original jurisdiction over this matter.

8.     This Court has supplemental jurisdiction over McGuire's state law claims against Defendants Julie and Thomas Bowlin, Joy Szondy, and Chelon Danielson for defamation, making malicious and reckless reports under the Maltreatment of Minors

2

Reporting Act, Minn. Stat. § 626.556, and civil conspiracy, as well as McGuire's state law claim against Defendant I.S.D. 833 for violation of the Minnesota Government Data Practices Act, pursuant to 28 U.S.C. § 1367(a) because those claims are so related to his civil rights claims, over which this Court has original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution, and judicial economy, convenience, and fairness to the parties named herein will result through this Court's exercise of supplemental jurisdiction over those claims.

9.      Plaintiff Nathan McGuire brings these actions not only for money damages, but also for the purpose of obtaining injunctive relief reinstating him to his position as varsity girls' basketball coach at Woodbury High School.

## PARTIES

10.     Plaintiff Nathan McGuire is a citizen of the United States and a resident of the State of Minnesota.

11.     Independent School District No. 833 ("ISD No. 833") is a public school district organized and operated under the laws of the State of Minnesota.

12.     Defendant Keith Jacobus is a citizen of the United States and a resident of the State of Minnesota.

13.     Defendant Denise Griffith is a citizen of the United States and a resident of the State of Minnesota.

14.     Woodbury High School is a public high school and is a member of ISD No. 833.

3

15.     The South Washington County School Board is a seven-member non-profit entity charged with governing, managing, and controlling ISD No. 833 and the interests of its member schools, including Woodbury High School.

16.     Defendant Julie A. Bowlin is a citizen of the United States and a resident of the State of Minnesota.

17.     Defendant Thomas M. Bowlin is a citizen of the United States and a resident of the State of Minnesota.

18.     Defendant Joy M. Szondy is a citizen of the United States and a resident of the State of Minnesota.

19.     Defendant Chelon L. Danielson is a citizen of the United States and a resident of the State of Minnesota.

20.     This Court has personal jurisdiction over all Defendants and venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because all of the Defendants reside here and a substantial part of the events or omissions giving rise to the claims alleged by McGuire occurred here.

## FACTS

I.     GENERAL BACKGROUND.

21.     Nathan McGuire is 39 years old and has been married to his wife, Lynn, for 14 years.  Nathan and Lynn have three young children, ages 8 to 10.

22.     In the fall of 2012, McGuire was hired by ISD No. 833 as the varsity girls' basketball coach at Woodbury High School.

23.     Prior to accepting the coaching contract at Woodbury High School, McGuire worked as a kindergarten teacher and junior high track coach in ISD No. 833 since approximately 1999.   To this day, McGuire is still working as a kindergarten teacher at Armstrong Elementary School, a public elementary school that is also in ISD No. 833.

24.     McGuire has a bachelor's degree in elementary education from the University of Minnesota-Duluth and received his master's degree in education from Southwest State University.

25.     McGuire began his career coaching girls' high school basketball in 2004 as the girls' basketball coach at the Minnesota Business Academy, a business charter school formerly located in St. Paul, Minnesota.   In his first season as a coach, the Minnesota Business Academy won a share of the conference title.

26.     In 2008, McGuire was hired as the varsity girls' basketball coach at Henry Sibley High School.   He remained there for two seasons.

27.     In 2010, McGuire became the varsity girls' basketball coach at the Academy of Holy Angels, where he remained for two years before accepting the coaching position at Woodbury High School.

28.     During the 2011-2012 season, the year before McGuire took over the program, the Woodbury High School varsity girls' basketball team finished the season with a 10-18 record.

29.     At all relevant times, Defendant Keith Jacobus ("Jacobus") has been the superintendent for ISD No. 833.  He remains in that position as of the date of this Complaint.

30.     At all relevant times, Defendant Denise Griffith ("Griffith") has been employed as the director of human resources for ISD No. 833.

## II.     2012-2013 SEASON.

31.     During the 2012-2013 season, McGuire's first season as head coach at Woodbury High School, the team compiled a record of 19-10, finished third in their conference, and finished as runners up in their section tournament, missing the state tournament by only one game.

32.     During that season, two girls, "Minor Player A" and "Minor Player B," daughters of Defendants Joy Szondy and Chelon Danielson, respectively, were players on the Woodbury High School girls' basketball junior varsity team, coached by Kerry Daly.

33.     On February 6, 2013, McGuire became aware that Minor Player A and Minor Player B had acted disrespectfully toward a referee in a junior varsity game the previous day.  After the game concluded, that referee sent an email to Jason Gonnion, Woodbury High School's activities director ("Gonnion"), specifically describing Minor Player A and Minor Player B's conduct and expressing that, as a graduate of Woodbury High School, he was disappointed by their lack of sportsmanship.  That referee also stated that if he was the coach, Minor Player A would be off the team as a result of her conduct.

34.     Based on that incident, McGuire's coaching staff made the decision not to include Minor Player A on the team's roster for the upcoming section tournament. When McGuire and his coaching staff informed Minor Player A of that decision, she was visibly upset, immediately quit the team, and left the room.

35.     After the coaching staff's decision to leave Minor Player A off the team's roster for the section tournament, between February 6 and approximately February 20, 2013, Defendant Joy Szondy sent a series of emails to, among others, Gonnion, McGuire, and Plante claiming the decision to leave Minor Player A off the section tournament roster was "false pretense," alleging that the coaching staff made untruthful statements regarding Minor Player A's behavior, and stating that Szondy "would be filing a formal complaint." Szondy also arranged for a meeting with Gonnion, McGuire, and Kerry Daly on February 8, 2013 to discuss the coaching staff's decision.

36.     Later that year, from December 28-30, 2013, McGuire's house was vandalized three nights in a row. On the third night of the vandalism, December 30, 2013, McGuire observed the vandalism in progress from his home. McGuire's wife called the police while McGuire chased the vandals to their vehicle, where he identified Minor Player A. Shortly thereafter, the police performed a stop of the vehicle observed by McGuire. Both Minor Player A and Minor Player B were in that vehicle, and Minor Player A received a citation for disorderly conduct for vandalizing McGuire's home.

### III.   2013-2014 SEASON.

#### A.   BOWLINS BRING COMPLAINTS BEFORE SEASON EVEN STARTS.

37.   Neither Minor Player A nor Minor Player B came out for the Woodbury High School girls' basketball team during the 2013-2014 season.

38.   "Minor Player C" was a player on the varsity girls' basketball team that McGuire coached at the Academy of Holy Angels during the 2011-2012 season.

39.   In the summer of 2013, McGuire received confirmation that Minor Player C would be transferring to Woodbury High School and was interested in playing basketball.  Minor Player C subsequently enrolled at Woodbury High School in the ninth grade during the 2013-2014 season.

40.   In November of 2013, before any games had been played in the 2013-2014 season and following a scrimmage against Como Park Senior High School, McGuire was requested to attend a meeting that was arranged by Minor Player C's parents, Defendants Julie Bowlin and Thomas Bowlin.  Also present at that meeting were Gonnion, Linda Plante, the principal at Woodbury High School ("Plante"); Kerry Daly and Mark Obarski, McGuire's assistant coaches on the Woodbury High School girls' basketball team; and Minor Player C.  During that meeting, Defendants Julie and Thomas Bowlin repeatedly requested a "status update" on Minor Player C, including whether Minor Player C would make the varsity roster, whether she would be in the starting lineup for the varsity team, and how much playing time she would receive as a varsity player.  This meeting was scheduled, and these complaints were made, even though the coaching staff had not yet

decided which players would be selected for the varsity roster and even though no competitive games had been played yet that season.

41.    At that meeting, McGuire stated to Defendants Julie and Thomas Bowlin several times that he did not know how much playing time Minor Player C would receive.  He observed that this did not ease their concerns and the Bowlins continued to raise complaints about Minor Player C's playing time and her "status" on the team.

42.    At approximately the same time as that meeting, Defendants Julie and Thomas Bowlin arranged another separate meeting with Kevin Kieger, a parent of a player on the Woodbury High School team and an influential parent in the program.  At that meeting, Defendants Julie and Thomas Bowlin stated that they were concerned about Minor Player C's status on the team under McGuire.  Kieger interpreted the contents and tone of the meeting to be about Minor Player C's playing time.  Defendant Julie Bowlin stated during that meeting that either McGuire is removed as coach or Minor Player C would leave the program.

43.    Following this meeting, Kieger was left with the impression that Defendants Julie and Thomas Bowlin were dissatisfied with Minor Player C's playing time and would attempt to have McGuire removed as the head coach as a result.

44.    Following both of those meetings, Defendants Julie and Thomas Bowlin contacted the Minnesota State High School League ("MSHSL") in order to raise additional complaints about McGuire and were informed by the MSHSL that they would need to bring their complaint with Woodbury High School per MSHSL policies.

9

45.     On information and belief, Defendants Julie and Thomas Bowlin contacted Woodbury High School and demanded that they remove McGuire as the girls' basketball coach.

46.     On information and belief, Defendants Julie and Thomas Bowlin also contacted ISD No. 833 administration and demanded that they remove McGuire as the girls' basketball coach.   Jacobus and Griffith were contacted by Defendants Julie and Thomas Bowlin, or in the alternative, had knowledge of the fact and content of the Bowlins' contact with ISD No. 833.

47.     On information and belief, Defendants Julie and Thomas Bowlin met Defendants Joy Szondy and Chelon Danielson around this time, and Szondy and Danielson attended or otherwise participated in one or more of the meetings arranged by Defendants Julie and Thomas Bowlin described in Paragraphs 44-46.

48.     After the meeting with the Woodbury High School coaches and administration, Minor Player C attended one more practice.  After that practice, and within approximately one week, McGuire was informed that Minor Player C would no longer be playing for the Woodbury High School girls' basketball team.  Minor Player C subsequently transferred to another high school.

49.     After giving notice of Minor Player C's transfer decision, Defendant Julie Bowlin contacted at least one individual and informed him that she was going to "take down Nathan McGuire."  That individual was left with the impression that Defendant Julie Bowlin would do everything in her power to have McGuire removed as the coach.

50.     Although Minor Player C was no longer a player on the Woodbury High School girls' basketball team, on information and belief, Defendants Julie and Thomas Bowlin, Joy Szondy, and Chelon Danielson continued to make complaints to the administration of Woodbury High School, and to ISD No. 833 administration with the intended goal of having McGuire removed as coach. These complaints were made to Defendants Jacobus and Griffith, or Jacobus and Griffith were aware of the complaints, their source and their content.

**B.     INITIAL INVESTIGATION OF MCGUIRE RESULTS IN NO DISCIPLINARY ACTION.**

51.     In early January of 2014, several players on the Woodbury High School girls' basketball team were contacted by Plante, the Woodbury High School principal, and asked to have one-on-one conversations in Plante's office.

52.     During these meetings, Plante asked the girls about how McGuire ran practice, how he treated his players, and generally inquired about his coaching practices.

53.     McGuire was not notified that these meetings were taking place, nor has he been given any reason for Woodbury High School performing any investigation of him at that time.

54.     On information and belief, ISD No. 833 initiated these meetings solely because of complaints from Defendants Julie and Thomas Bowlin, Joy Szondy, and Chelon Danielson about McGuire.

55.     Woodbury High School did not take any action as a result of these meetings, and McGuire was permitted to coach the team during its next game against East Ridge High School on January 3, 2014.

56.     As of January 3, 2014, the Woodbury High School varsity girls' basketball team had a record of 5-4, including a win against Washburn High School, which had one of the best teams in the State of Minnesota during the 2013-2014 season.

### C.     FIVE DAYS LATER, MCGUIRE PLACED ON NON-DISCIPLINARY LEAVE.

57.     Five days later, before his team's game against Forest Lake High School on January 8, 2014, McGuire was notified by Plante that he was being placed on non-disciplinary leave and would not be permitted to coach the team until further notice.  Also present for this conversation were Gonnion and Todd Huber, the Woodbury High School assistant principal.  McGuire was instructed during this conversation not to have any further contact with players on the team or his coaches.

58.     On information and belief, ISD No. 833 placed McGuire on non-disciplinary leave solely because of complaints from Defendants Julie and Thomas Bowlin, Joy Szondy, and/or Chelon Danielson, including additional complaints made after January 3, 2014.  This decision was made by Griffith and Jacobus, or with their knowledge and agreement.

59.     McGuire was formally notified of this non-disciplinary leave by letter from Plante dated January 8, 2014, which stated that McGuire had been placed on administrative paid leave pending the outcome of an investigation into allegations against him.  In that letter, McGuire was told that he would be interviewed as part of the

12

investigation and that he would receive further notice of the allegations against him and a basic description of any evidence in support of the allegations. McGuire was also told that he would have an opportunity to respond to the allegations against him.

60.     ISD No. 833, as the governing school district, is liable for the actions and conduct of Plante and Gonnion, whose actions and conduct were on behalf of ISD No. 833.

61.     McGuire did not receive any hearing prior to being placed on leave, he was not informed of any reason why he was placed on leave, and he was neither informed of nor asked to respond to any allegation against him.

D.     ISD No. 833's Investigation of McGuire.

62.     After placing McGuire on non-disciplinary leave, ISD No. 833 retained a law firm to perform an investigation into the parent complaints about McGuire.

63.     An attorney from that law firm scheduled meetings with all players on the Woodbury High School girls' basketball team, as well as assistant coaches Kerry Daly and Mark Obarski.

64.     During these meetings, which were arranged on short notice and which the players' parents were only reluctantly permitted to attend, the attorney asked the players and coaches a number of leading questions designed to build a case against McGuire returning as coach.

65.     On information and belief, Defendants Julie and Thomas Bowlin, Joy Szondy, and Chelon Danielson were among the persons interviewed by the attorney, and the primary case to remove McGuire as coach was built through their interviews.

66.     On information and belief, Jacobus and Griffith determined solely on the basis of parent complaints that ISD No. 833 would not renew McGuire's coaching contract before the attorney even interviewed McGuire regarding the allegations against him.

**E.     INTERVIEW OF NATHAN MCGUIRE.**

67.     On January 28, 2014, at the direction of ISD No. 833, McGuire attended an interview conducted by the attorney.

68.     At no time prior to, during, or after this meeting was McGuire informed by Woodbury High School, anyone from ISD No. 833 including Jacobus and Griffith, or the attorney why he had been placed on non-disciplinary leave, what would be discussed at that interview, or what allegations had been made against McGuire, nor was McGuire given any description of any evidence in support of the allegations.

69.     During this interview, McGuire was confronted with a series of bizarre and irrelevant questions relating to his coaching and personal life, many of which related to events that did not happen or that were presented in a biased or otherwise fictional manner.

70.     None of the questions posed to McGuire provided him with any understanding of why he was removed as the coach of the Woodbury High School girls' basketball team or what the allegations against him were.  He has never been provided with any factual basis for the removal.  On information and belief, the questions were not designed to investigate the allegations against McGuire or to provide him with an opportunity to confront the allegations against him, but rather were designed to build a

14

case against McGuire in order to remove him as the girls' basketball coach. On information and belief, Griffith and Jacobus had already determined based on parental complaints that they wanted McGuire removed, and wanted the investigation to build a case that would give the appearance of compliance with state and federal law.

71.    At no point has McGuire been informed of the allegations against him, the identity of the individuals who made any such allegations, or the evidence supporting those allegations.

72.    Based upon the attorney's conversations with Jacobus, Griffith, the players, parents, coaches, and McGuire, the attorney drafted and provided to ISD No. 833 an investigation report.

73.    To date, despite McGuire's requests, ISD No. 833 has refused to provide any portion of this investigation report to McGuire, has refused even to provide a redacted report, and has refused to provide a summary of the report.

74.    On information and belief, the findings and conclusions of the investigation report showed that the statements made by Defendants Julie and Thomas Bowlin, Joy Szondy, and Chelon Danielson to ISD No. 833 and its attorney were false or otherwise unsupported by the facts.

F.    **DESPITE EXONERATING MCGUIRE, ISD NO. 833 STILL EXTENDS HIS LEAVE UNTIL END OF SEASON.**

75.    Following the completion of the investigation report, ISD No. 833 determined that McGuire would remain on leave through the end of the 2013-2014 season.

76.    On January 31, 2014, Plante sent McGuire a letter informing him that his leave would continue through the end of the 2013-2014 girls' basketball season. No reason was given for this decision.

77.    At all relevant times, McGuire has been permitted to continue teaching kindergarten in ISD No. 833.

78.    After McGuire was removed as head coach, the Woodbury High School varsity girls' basketball team finished the season by losing 17 of their next 18 games. At least nine of those losses were by ten points or more and at least two of those losses were to teams that Woodbury High School had defeated earlier in the season while McGuire was still the head coach.

### G.    AFTER SEASON, ISD NO. 833 NON-RENEWS MCGUIRE'S CONTRACT BASED SOLELY ON PARENT COMPLAINTS.

79.    Shortly after the team's season ended, McGuire was informed by ISD No. 833 that his contract to coach the girls' basketball team would not be renewed.

80.    On March 14, 2014, McGuire received a letter from Plante documenting the non-renewal of his contract. On information and belief, the bare assertion in the letter that the decision not to renew McGuire's contract "is based on the results of a recent investigation and is not based solely on parent complaints" is false.

81.    To the contrary, on information and belief, ISD No. 833, Jacobus and Griffith, actually made the decision to non-renew the contract based solely on parent complaints.

82.     In addition, the supposed reasons given in the March 14, 2014 letter for the non-renewal of McGuire's contract are so vague as to lack meaning, are false, are unsupported by the findings of the investigation, and provide insufficient information to permit McGuire to know what allegations were made against him and why his contract was not renewed, including the generic and unsupported assertions that McGuire "failed to meet the administration's expectations"; that the administration "would like the Woodbury Girls' Basketball program to move in a different direction"; and that McGuire's "leadership style, coaching philosophy, conduct, and coaching methods differ from the leadership style, coaching philosophy, conduct, and coaching methods that are desired by the administration."

83.     Despite the assurances made by ISD No. 833 in its January 8, 2014 letter, at no time has McGuire received notice of the allegations against him, any description of the evidence in support of those allegations, or any opportunity to respond to those allegations.

## IV.     McGUIRE REQUESTS HEARING TO CONTEST DISMISSAL.

### A.     McGUIRE REQUESTS HEARING BEFORE SCHOOL BOARD.

84.     After receiving notice that his contract would not be renewed, in April of 2014 McGuire requested a hearing before the South Washington County School Board, which governs ISD No. 833 and Woodbury High School. Because the non-renewal was, on information and belief, based solely on parent complaints, McGuire was entitled to a hearing.

85.     ISD No. 833 informed McGuire that he was not entitled to an evidentiary hearing and that, although he would receive an opportunity to address the members of the School Board and explain why he believes his contract should have been renewed, McGuire would not receive a formal hearing.

86.     Prior to his appearance before the School Board, and despite his requests, McGuire was not provided with a copy of the investigation report (redacted or unredacted), nor with a summary of the investigation report, nor with its findings and conclusions, nor with any information regarding the allegations against him, nor with information regarding what evidence the School District, Jacobus and Griffith considered in deciding not to renew his contract.

87.     Before McGuire was even given a hearing, a chance to respond to ISD No. 833's decision not to renew his coaching contract, or an opportunity to present evidence, Jacobus and Griffith caused McGuire's termination to be included on the consent agenda. As a result, at the School Board's March 6, 2014 meeting and by its consent agenda, the School Board approved the retirement, resignation, and termination of sixteen individuals, including McGuire as varsity coach. These consent items were declared to be routine and non-controversial by Jacobus, Griffith, and/or the School Board and were approved by a single motion without any discussion. The School Board approved the consent agenda items at the March 6 meeting, including the non-renewal of McGuire's coaching contract, without information about the basis for his termination, without information that McGuire did not want his coaching contract terminated, and without any information relating to the circumstances of his non-renewal.

### B.   MAY 8, 2014 BOARD MEETING.

88.   On May 8, 2014, McGuire was given the opportunity to address the School Board and made a statement regarding why he felt the reasons for non-renewal were unjustified, unsupported by the facts, and solely on the basis of parent complaints.

89.   To support his position, McGuire presented the School Board with 19 statements from Woodbury High School girls' basketball players, parents, and coaches supporting McGuire and stating that the most credible explanation for the non-renewal of McGuire's contract was that the decision was made solely due to parent complaints.

90.   After McGuire's statement was made, at least one School Board member asked the School Board if they could take action and give McGuire his job back. That School Board member also requested to review the investigation report, but was not permitted to do so. Although ISD No. 833 allowed McGuire to remain in the room during this discussion, it has subsequently refused, despite request, to produce to McGuire the audio recording of the conversation that took place.

91.   A statement was read by Board Chair Ron Kath stating that the School Board was not obligated to take any action. Accordingly, despite the objection of at least one member, the School Board simply declared the session to be over and did not take any action on McGuire's objections.

## V.   DEFENDANTS JULIE AND THOMAS BOWLIN, JOY SZONDY, AND CHELON DANIELSON FILE FALSE REPORTS WITH MINNESOTA DEPARTMENT OF EDUCATION.

92.   In January of 2014, Defendants Julie and Thomas Bowlin, Joy Szondy, and Chelon Danielson filed complaints with the Minnesota Department of Education alleging

that McGuire was responsible for the emotional or mental maltreatment of Minor Players A, B, and C, respectively.

93.     On information and belief, the allegations of Defendants Julie and Thomas Bowlins, Joy Szondy, and Chelon Danielson forming the basis for those complaints were the same or similar to their allegations forming the basis for their complaints brought to ISD No. 833.  In fact McGuire was never a teacher for a class that Minor Players A, B, or C attended; therefore, the complaints filed by the Bowlins, Szondy, and Danielson necessarily consisted solely of complaints about McGuire's coaching of the girls' basketball team at Woodbury High School.

94.     The complaints filed by Defendants Julie and Thomas Bowlin, Joy Szondy, and Chelon Danielson constitute false reports to the Minnesota Department of Education because the information provided to the Minnesota Department of Education was incendiary, malicious, false, fictitious, and was knowingly or recklessly made with the intended result of causing McGuire to lose his teaching and/or coaching license in the State of Minnesota.

95.     On or about September 12, 2014, relating to the complaints filed by the Bowlins, Szondy, and Danielson, Vicky Anderson, Senior Maltreatment Investigator with the Minnesota Department of Education, sent McGuire a letter via U.S. Mail informing him that he would be investigated for emotional or mental maltreatment.

96.     On September 22, 2014, McGuire participated in an interview conducted by Ms. Anderson.   At that interview, McGuire was asked many of the same bizarre questions relating to his coaching and personal life that he was asked at the interview

conducted by ISD No. 833, many of which related to events that did not happen or that were presented in a biased or otherwise fictional manner.

97.    On March 3, 2015, the Minnesota Department of Education issued three Reports of Alleged Student Maltreatment (the "Reports") concluding that McGuire was not culpable for any alleged student maltreatment.  In relevant part, the Reports found that McGuire engaged in permissible conduct typical of a varsity athletics coach including using a loud voice and making contact with athletes for the purposes of direction and teaching.  The Reports also found that McGuire did not engage in impermissible conduct alleged by Defendants Julie and Thomas Bowlin, Joy Szondy, or Chelon Danielson including targeting Minor Player C or making contact with Minor Player C in any manner inappropriate for athletic situations.  Accordingly, the Reports concluded that McGuire was not responsible for any maltreatment alleged by the Bowlins, Szondy, or Danielson relating to Minor Players A, B, or C.

98.    In fact, the information provided by Defendants Julie and Thomas Bowlin, Joy Szondy, and Chelon Danielson to the Minnesota Department of Education was false, described lawful and proper conduct by McGuire in a false light so as to cast doubt upon his character and intentions, and the complaints were made despite there being no evidence of emotional or mental maltreatment of Minor Players A, B, or C.

## VI.    INJURY TO MCGUIRE.

99.    In or about April of 2014, after ISD No. 833 had decided not to renew his coaching contract, McGuire submitted job applications to three local high schools seeking a head coach for their varsity girls' basketball teams.

21

100.   Despite being well qualified for all three coaching opportunities, McGuire did not even receive a job interview for any of those three openings.

101.   On information and belief, the reason why McGuire did not receive an interview is because of concerns about McGuire's reputation and character as a result of ISD No. 833's decision, at the direction of Jacobus and Griffith, not to renew McGuire's coaching contract, ISD No. 833's refusal to make any statements confirming that McGuire did not engage in misconduct at Woodbury High School following his termination from coaching and the investigation which cast him in a false and negative light, and/or the uncertainty resulting from ISD No. 833's actions.

102.   In or about September of 2014, McGuire submitted job applications at two additional local high schools seeking a head coach for their varsity girls' basketball teams.

103.   McGuire was well qualified for both coaching opportunities, was allowed to interview for those openings, and was told by one of those high schools that McGuire was the preferred candidate and that if he did not receive the job, it would be due to his non-renewal by Woodbury High School and the then-pending complaints brought by Defendants Julie and Thomas Bowlin, Joy Szondy, and Chelon Danielson to the Minnesota Department of Education.

104.   As a result of Defendants' conduct, McGuire did not receive a job offer from either of those two high schools.

22

105.   In or about October of 2014, after unsuccessfully applying for head coaching positions, McGuire inquired about an opening to serve as a scout for the varsity girls' basketball team at a local high school.

106.   Despite being obviously and categorically overqualified for a scouting position, McGuire was not even offered *that* position, and has been unable to obtain any employment as a varsity or junior varsity girls' basketball coach in Minnesota as a result of Defendants' conduct.

107.   Conduct by ISD No. 833, Jacobus, and Griffith also deprived McGuire of his property interest, created under Minnesota law, and protected by the 14th Amendment to the United States Constitution, to the continuation of his coaching contract where the sole basis for removal is parental complaints.

108.   Further, ISD No. 833 has violated the Minnesota Government Data Practices Act by refusing to provide public data to McGuire, refusing to disclose public data to potential employers, refusing to disclose properly requested data of which McGuire is the subject, regardless of whether that data is public, and it has injured McGuire by eviscerating his ability to apply for and obtain future coaching positions.

109.   As a direct and proximate cause of the illegal conduct of Defendants ISD No. 833, Jacobus, Griffith, Julie and Thomas Bowlin, Joy Szondy, and Chelon Danielson, McGuire suffered mental anguish, damage to his reputation, past and future wage loss and lost earning capacity, and suffered adverse consequences socially and professionally.

110.   Further, McGuire is entitled to an award of punitive damages against Defendants Keith Jacobus and/or Denise Griffith because their conduct was in reckless or

callous disregard of, or indifference to, McGuire's right to no deprivation of his property interest without due process of law.

111.    At all relevant times, ISD No. 833, Jacobus and Griffith were acting under color of law.

**COUNT ONE**
**FOURTEENTH AMENDMENT VIOLATIONS**
**42 U.S.C. § 1983**
**(AGAINST INDEPENDENT SCHOOL DISTRICT NO. 833)**

112.    McGuire realleges and incorporates by reference herein the foregoing allegations as though fully set forth herein.

113.    McGuire has a property interest in employment as the girls' basketball coach at Woodbury High School, a school within ISD No. 833, a public entity, which is protected by the Fourteenth Amendment to the United States Constitution, where the sole basis of removal is parental complaints.

114.    At a minimum, due process requires that a deprivation of property be preceded by notice and a meaningful opportunity to be heard, appropriate to the nature of the case and the deprivation.

115.    Minnesota Statutes §§ 122A.33, subd. 3 and 122A.58 create a state law-created property interest, protected by the Fourteenth Amendment to the United States Constitution, in a coaching contract's renewal where that contract is not renewed on the sole basis of the existence of parent complaints.

116.   McGuire had a legitimate claim of entitlement to employment and renewal of his coaching contract where the sole basis for the non-renewal of his coaching contract was the existence of parent complaints.

117.   Solely because of the existence of parent complaints, and contrary to Minnesota law and the Fourteenth Amendment to the United States Constitution, ISD No. 833 did not renew McGuire's coaching contract.

118.   McGuire was also deprived of a meaningful opportunity to be heard to contest the non-renewal of his coaching contract.

119.   In doing so, ISD No. 833 deprived McGuire of the following clearly established and well-settled federal constitutional rights, all of which were his right because the non-renewal was based solely on parent complaints:

      a.     Right to be provided with notice of the allegations against him;

      b.     Right to be shown an articulated and non-vague standard of conduct which he is accused of violating;

      c.     Right to be provided with an opportunity to rebut the charges against him in a meaningful way and at a meaningful time;

      d.     Right to be confronted with evidence supporting any allegations against him;

      e.     Right to pre-deprivation and/or post-deprivation hearings;

      f.     Right to cross-examine witnesses who raised allegations against him; and

g.   Right to be present when adverse evidence is presented to the fact-finder.

120.   The foregoing conduct by I.S.D. No. 833 was intentional, was made under color of law, and constitutes a violation of the Fourteenth Amendment to the United States Constitution, as implemented by 42 U.S.C. § 1983.

121.   On information and belief, the foregoing conduct by I.S.D. No. 833 is pursuant to policy, practice, or custom which, as a result, deprives individuals such as Nathan McGuire of their above-identified constitutional rights.   Additionally and in the alternative, the foregoing conduct was based on the decision and actions of Defendant Jacobus, to whom the school board accorded complete deference, and who was the final policymaker.   Specifically, as stated at the School Board meeting of May 8, 2014, after McGuire presented his information and statements in support of his belief that his coaching contract was non-renewed solely because of the existence of parent complaints, a school board member asked if his contract could be renewed after all.   However, the school board chair instructed that the School Board was not required to take any further action, that the School Board could not review the investigation report, and accordingly no review was allowed or made of the decision of Defendant Jacobus together with Defendant Griffith.

122.   As a direct and proximate cause of ISD No. 833's conduct, Plaintiff Nathan McGuire suffered mental anguish, damage to his reputation, and suffered adverse consequences socially and professionally, including loss of earnings and loss of earning capacity.

123. McGuire is entitled to recovery of his costs, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988.

**COUNT TWO**
**FOURTEENTH AMENDMENT VIOLATIONS**
**42 U.S.C. § 1983**
**(AGAINST DEFENDANTS KEITH JACOBUS AND DENISE GRIFFITH, IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES)**

124. McGuire realleges and incorporates by reference herein the foregoing allegations as though fully set forth herein.

125. McGuire has a property interest in employment as the girls' basketball coach at Woodbury High School, a public entity, which is protected by the Fourteenth Amendment to the United States Constitution, where the sole basis of removal is parental complaints.

126. At a minimum, due process requires that a deprivation of property be preceded by notice and a meaningful opportunity to be heard, appropriate to the nature of the case and the deprivation.

127. Minnesota Statutes §§ 122A.33, subd. 3 and 122A.58 establish a state law-created property interest, protected by the Fourteenth Amendment to the United States Constitution, in a coaching contract's renewal where that contract is not renewed on the sole basis of the existence of parent complaints.

128. McGuire had a legitimate claim of entitlement to employment and renewal of his coaching contract where the sole basis for the non-renewal of his coaching contract was the existence of parent complaints.

129.   Solely because of the existence of parent complaints, and contrary to Minnesota law and the Fourteenth Amendment to the United States Constitution, Defendants Keith Jacobus and Denise Griffith caused the non-renewal of McGuire's coaching contract.   Specifically, on information and belief, Defendants Jacobus and Griffith determined that ISD No. 833 should non-renew McGuire's coaching contract solely based on the existence of parent complaints, caused an investigation with the purpose of building a case in order to circumvent the statutory mandate so that ISD No. 833 could non-renew McGuire's coaching contract at the end of the 2013-2014 girls' basketball season, and directed that McGuire's name be placed on the consent agenda for termination by the School Board.   Said actions were, on information and belief, taken directly by Griffith and Jacobus or, with regard to Jacobus, with his knowledge, agreement, and direction.

130.   McGuire was also deprived by Defendants Jacobus and Griffith of a meaningful opportunity to be heard to contest the non-renewal of his coaching contract.

131.   In doing so, Defendants Jacobus and Griffith deprived McGuire of the following clearly established and well settled federal constitutional rights of McGuire, all of which were his right because the non-renewal was based solely on parent complaints:

      a.     Right to be provided with notice of the allegations against him;

      b.     Right to be shown an articulated and non-vague standard of conduct which he is accused of violating;

      c.     Right to be provided with an opportunity to rebut the charges against him in a meaningful way and at a meaningful time;

28

d.    Right to be confronted with evidence supporting any allegations against him;

e.    Right to pre-deprivation and/or post-deprivation hearings;

f.    Right to cross-examine witnesses who raised allegations against him; and

g.    Right to be present when adverse evidence is presented to the fact-finder.

132.    The foregoing conduct by Defendants Jacobus and Griffith was intentional, was made under color of law, and constitutes a violation of the Fourteenth Amendment to the United States Constitution, as implemented by 42 U.S.C. § 1983.

133.    As a direct and proximate cause of the conduct of Defendants Jacobus and Griffith, in their individual capacities, Plaintiff Nathan McGuire suffered mental anguish, damage to his reputation, and suffered other adverse consequences socially and professionally, including loss of earnings and loss of earning capacity.

134.    Defendant Jacobus is liable based on his direct involvement, and in the alternative, on his supervisory role in the deprivation of McGuire's right to procedural due process. Defendant Jacobus' supervisory liability is based on inaction that amounts to reckless disregard of, deliberate indifference to, or tacit authorization of the constitutional violation, on his supervisory encouragement, condonation or acquiescence, and/or on action that constitutes direction to engage in the acts he knew or should have known would result in the deprivation of property without due process.

135.   McGuire is entitled to recovery of his costs, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988.

136.   McGuire is also entitled to punitive damages from Defendants Jacobus and Griffith, in their individual capacities, because their conduct constitutes reckless or callous indifference to McGuire's federally protected rights.   By depriving McGuire of his property interest in employment when they caused his coaching contract to be non-renewed based solely on the existence of parent complaints, Defendants Jacobus and Griffith acted in reckless or callous disregard of, or were indifferent to, McGuire's right to procedural due process.

**COUNT THREE**
**VIOLATION OF MINNESOTA GOVERNMENT DATA PRACTICES ACT**
**MINN. STAT. § 13.01 *et seq.***
**(AGAINST DEFENDANT INDEPENDENT SCHOOL DISTRICT NO. 833)**

137.   McGuire realleges and incorporates by reference herein the foregoing allegations as though fully set forth herein.

138.   At all material times, ISD No. 833 was acting under color of law.

139.   Minnesota's Government Data Practices Act, Minn. Stat. § 13.01 *et seq.* (the "Data Practices Act"), governs requests for access to government data and requires generally that individuals be permitted to inspect and copy public government data.

140.   The investigation report prepared by ISD No. 833's attorney from the investigation of McGuire constitutes either public data or at a minimum private data on McGuire.

141. Despite a proper request made by McGuire under the Data Practices Act, ISD No. 833 refused to produce that document to McGuire in willful violation of the statute.

142. At a minimum, ISD No. 833 was obligated to redact nonpublic data that would identify other subjects of the investigation whose data is nonpublic and produce as much of the report as possible, or to produce a summary of the report. However, falsely claiming that the confidential information was inseparably intertwined with the investigation report, ISD No. 833 willfully and illegally refused to produce any of the requested public data to McGuire.

143. In addition, McGuire is entitled under the Data Practices Act to review the audio tape for the portions of the School Board meeting on May 8, 2014 at which he was present. This information constitutes public data, or at a minimum data of which McGuire is the subject; was created by ISD No. 833; and is in their sole possession and control.

144. Despite a proper request made by McGuire under the Data Practices Act, ISD No. 833 willfully refused to produce that document to McGuire in violation of the statute.

145. McGuire was damaged and suffered mental anguish, damage to his reputation, and adverse consequences socially and professionally, including loss of earnings and loss of earning capacity, as a result of these violations of the Data Practices Act.

146.    Furthermore, ISD No. 833's violation of the Data Practices Act, including its willful refusal to disclose to McGuire the outcome of the investigation or provide any information whatsoever regarding the investigation to McGuire's potential future employers, caused concrete and tangible injury to McGuire's future job prospects.

147.    McGuire is entitled to recovery of damages sustained, costs, reasonable attorneys' fees, and exemplary damages pursuant to Minn. Stat. § 13.08, subd. 1.

**COUNT FOUR**
**DEFAMATION**
**(AGAINST DEFENDANTS JULIE AND THOMAS BOWLIN, JOY SZONDY, AND CHELON DANIELSON)**

148.    McGuire realleges and incorporates by reference herein the foregoing allegations as though fully set forth herein.

149.    Defendants Julie and Thomas Bowlin, Joy Szondy, and Chelon Danielson made statements to, among others, Woodbury High School, ISD No. 833, ISD No. 833's attorney who investigated McGuire, the Minnesota State High School League, and, on information and belief, to other individuals in the community.

150.    On information and belief, the defamatory statements made by Defendants Julie and Thomas Bowlin, Joy Szondy, and Chelon Danielson consisted of statements that have no basis in fact and that cast McGuire's personal and professional life in a false light including, *inter alia*, that on at least one occasion, Defendant Julie Bowlin stated to an individual that McGuire had been arrested relating to the allegations at Woodbury High School. This statement is completely and undeniably false. Defendants Julie and Thomas Bowlin, Joy Szondy, and Chelon Danielson also made numerous specific

statements to the individuals and entities identified in the immediately preceding paragraph stating that McGuire had engaged in personal and professional misconduct and made numerous false statements to the Minnesota Department of Education including, as but a few examples, that McGuire "bullied" Minor Player C, that he engaged in "intentionally aggressive behavior" toward Minor Player C, that McGuire "pushed" Minor Player C "forcefully" on her back when she was running "full speed," and that McGuire "verbally attacked" and taunted Minor Player C. Each of these statements is false, as evidenced by the Minnesota Department of Education's conclusion that Minor Players A, B, and C were not subjected to maltreatment by McGuire. Furthermore, on information and belief, these statements were made to other individuals as well.

151.   Those statements were knowingly false, or in the alternative were made in reckless disregard of the truth, tended to injure McGuire's reputation, lowered him in the estimation of the community, and exposed McGuire to public contempt and degradation. In addition, and in the alternative, those statements were made with actual malice.

152.   Defendants Julie and Thomas Bowlin, Joy Szondy, and Chelon Danielson were negligent in the publication of these statements because they knew, or in the exercise of reasonable care should have known, that the statements were false.

153.   On information and belief, those statements inherently and negatively affected McGuire's reputation relating to his business or profession and, therefore, constitute *per se* defamation.

154.   McGuire's reputation was damaged as a result of those statements and McGuire suffered social and professional harm, including loss of earnings and loss of earning capacity.

155.   McGuire was injured as a result of those statements in an amount to be determined at trial.

## COUNT FIVE
## VIOLATION OF MINNESOTA MALTREATMENT OF MINORS REPORTING ACT
## MINN. STAT. § 626.556
## (AGAINST DEFENDANTS JULIE BOWLIN AND THOMAS BOWLIN, JOY SZONDY, AND CHELON DANIELSON)

156.   McGuire realleges and incorporates by reference herein the foregoing allegations as though fully set forth herein.

157.   Defendants Julie and Thomas Bowlin, Joy Szondy, and Chelon Danielson filed complaints with the Minnesota Department of Education, pursuant to Minn. Stat. § 626.556, alleging that McGuire was culpable for mental or emotional maltreatment of Minor Players A, B, and C, respectively.

158.   These complaints were based upon false or misleading facts, were made despite the absence of facts showing that McGuire had in fact mentally or emotionally maltreated Minor Players A, B, or C, and were knowingly or recklessly made with the purpose of causing McGuire to lose his license to teach or coach in the State of Minnesota.

159.   On March 3, 2015, the Minnesota Department of Education denied the complaints, concluding that Minor Players A, B, and C were not subjected to

maltreatment by McGuire and finding that "no evidence corroborates" that McGuire had contact with any student in an inappropriate manner, and that McGuire used the "same coaching style with all athletes" and did not specifically target Minor Player C.

160.    The complaints filed by Defendants Julie and Thomas Bowlin, Joy Szondy, and Chelon Danielson constitute false reports, on information and belief made knowingly and/or recklessly.

161.    Under Minnesota Statutes § 626.556, subd. 5, any persons who knowingly or recklessly make a false report under the Maltreatment of Minors Reporting Act are liable in a civil suit for actual damages suffered by the reported person, for punitive damages, and for costs and reasonable attorney fees.

162.    McGuire was damaged by the making of false complaints by Defendants Julie and Thomas Bowlin, Joy Szondy, and Chelon Danielson in an amount to be proven at trial.

**COUNT SIX**
**CIVIL CONSPIRACY**
**MINN. STAT. § 626.556**
**(AGAINST DEFENDANTS JULIE BOWLIN AND THOMAS BOWLIN, JOY SZONDY, AND CHELON DANIELSON)**

163.    McGuire realleges and incorporates by reference herein the foregoing allegations as though fully set forth herein.

164.    Defendants Julie and Thomas Bowlin, Joy Szondy, and Chelon Danielson jointly agreed to interfere with McGuire's coaching contract with Woodbury High School and to harm McGuire's reputation and social and professional standing by making false statements knowingly or in reckless disregard of the truth, all of which constitute

35

defamation, to, among others, Woodbury High School, ISD No. 833, ISD No. 833's attorney who investigated McGuire, the Minnesota State High School League, and, on information and belief, to other individuals in the community.

165.   Defendants Julie and Thomas Bowlin, Joy Szondy, and Chelon Danielson further jointly agreed to interfere with McGuire's coaching contract with Woodbury High School and to harm McGuire's reputation and social and professional standing by agreeing to make false reports with the Minnesota Department of Education.

166.   The agreement between Defendants Julie and Thomas Bowlin, Joy Szondy, and Chelon Danielson resulted in the defamation of McGuire and the making of three false reports with the Minnesota Department of Education.

167.   As a result of the defamation and making of false reports by Defendants Julie and Thomas Bowlin, Joy Szondy, and Chelon Danielson, McGuire was injured in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, McGuire respectfully requests that this Court:

A.   Enter judgment in favor of McGuire and against Defendants;

B.   Enter an order declaring the conduct of Independent School District No. 833 to be unconstitutional and, as to Count One, for compensatory damages in an amount to be determined by a jury;

C.   Enter an order declaring the conduct of Defendants Keith Jacobus and Denise Griffith, in their individual capacities, to be unconstitutional and, as to Count Two, for compensatory and punitive damages in an amount to be determined by a jury;

D.     Enter an order declaring the conduct of Independent School District No. 833 to be contrary to the law, willful, and, as to Count Three, for recovery of damages sustained and exemplary damages pursuant to Minn. Stat. § 13.08, subd. 1;

E.     Enter an order declaring the conduct of Defendants Julie Bowlin and Thomas Bowlin, Joy Szondy, and Chelon Danielson to be contrary to the law and, as to Counts Four, Five, and Six, for compensatory and punitive damages in an amount to be determined by a jury;

F.     Enter an order mandating that Plaintiff Nathan McGuire be reinstated as the varsity girls' basketball coach at Woodbury High School;

G.     Award McGuire his reasonable attorneys' fees, costs, and prejudgment interest pursuant to 42 U.S.C. § 1988; Minn. Stat. § 13.08, subd. 1; Minn. Stat. § 626.556, subd. 5; and any other applicable provisions of law; and

H.     Grant McGuire such other and further relief as may be just and proper under the circumstances.

## JURY TRIAL DEMAND

Plaintiff Nathan McGuire demands a jury trial as to all claims so triable.

[SIGNATURE PAGE FOLLOWS.]

FAFINSKI MARK & JOHNSON, P.A.

Dated: June 1, 2015          By: _____
                             Donald Chance Mark, Jr. (#67659)
                             Andrew T. James (#0390982)
                             Flagship Corporate Center
                             775 Prairie Center Drive, Suite 400
                             Eden Prairie, MN 55344
                             Phone (952) 995-9500
                             Fax (952) 995-9577
                             donald.mark@fmjlaw.com
                             andrew.james@fmjlaw.com

                             *Attorneys for Plaintiff Nathan McGuire*