**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Nathan C. McGuire,

Plaintiff,

v.

Independent School District No. 833; et al.,

Defendants.

Civ. No. 14-4980 (RHK/SER)
**MEMORANDUM OPINION AND ORDER**

---

Andrew T. James, Donald Chance Mark, Jr., Fafinski Mark & Johnson, PA, Eden Prairie, Minnesota, for Plaintiff.

Michael J. Waldspurger, Elizabeth J. Vieira, Rupp, Anderson, Squires & Waldspurger, Minneapolis, Minnesota, for School District Defendants.

---

## INTRODUCTION

When Independent School District No. 833 ("the District") decided not to renew Nathan McGuire's contract to coach the varsity girls' basketball team at Woodbury High School, he sued the District, its Superintendent, Keith Jacobus, and its Director of Human Resources, Denise Griffith (collectively, "Defendants"), alleging a deprivation of procedural due process in violation of the 14th Amendment (Counts I and II).[1] Defendants now move for judgment on the pleadings as to Counts I and II. For the reasons that follow, their Motion will be granted.

[1] McGuire also sued the District and a number of other individuals for violations of state law (Counts III–VI). Because these other claims are not relevant to this Motion, for purposes of this Order, the Court will refer to the moving defendants as "Defendants."

## BACKGROUND

The following facts are recited as alleged in the Second Amended Complaint. McGuire has been employed by the District as a kindergarten teacher since 1999. (Sec. Am. Compl. ¶ 23.) In the fall of 2012, the District also hired him as the varsity girls' basketball coach at Woodbury High School. (Id. ¶ 22.) In the fall of 2013, Player C enrolled at Woodbury High School to play basketball during the 2013-2014 season. (Id. ¶ 39.) In November 2013, before any games were played, McGuire attended a meeting requested by Player C's parents, Julie and Thomas Bowlin (the "Bowlins"). (Id. ¶ 40.) Woodbury High School principal Linda Plante also was present at the meeting. (Id.) Although the coaching staff had not yet decided on the varsity roster, the Bowlins repeatedly requested information about whether Player C would make the varsity roster and how much playing time she would receive. (Id.) McGuire replied that he did not know. (Id. ¶ 41.) Following the meeting, the Bowlins contacted several people within the District and requested that McGuire be removed from his coaching position. (Id. ¶¶ 45–46.) Though Player C transferred to another high school after this meeting, the Bowlins continued to make complaints. (Id. ¶¶ 48–50.)

In January 2014, allegedly in response to the Bowlins' complaints, Plante contacted some of the basketball team players and inquired how McGuire conducted practices and treated players. (Id. ¶¶ 51, 52.) On January 8, 2014, Plante notified McGuire that he was being placed on non-disciplinary leave and could not coach for the time being, pending the outcome of an investigation into allegations against him. (Id. ¶¶ 57–59.) McGuire contends that several other parents complained to the District,

prompting the District to hire an attorney to investigate complaints filed against him. (Id. ¶¶ 62, 63.) Over the next month, the attorney interviewed the players, their parents, assistant coaches, and McGuire. (Id. ¶¶ 64, 67.) McGuire was not informed, at any point, why he had been placed on non-disciplinary leave; what would be discussed during the interviews; what the allegations were against him; or what evidence supported those allegations. (Id. ¶¶ 61, 68–71.) At McGuire's interview, the attorney inquired about his coaching methods and asked about his personal life. (Id. ¶ 69.) The attorney later provided the District with an investigation report based on all the interviews. (Id. ¶ 72.) To date, McGuire has not received the report or specific information about the allegations against him. (Id. ¶ 73.)

On January 31, 2014, Plante informed McGuire that he would remain on non-disciplinary leave for the remainder of the season. (Id. ¶¶ 58, 59, 75, 76.) The school board subsequently approved the non-renewal of McGuire's coaching contract. (Id. ¶ 87.) On March 14, after the season had ended, Plante informed McGuire that his contract would not be renewed. (Id. ¶¶ 79–80.) She provided the following reasons for the non-renewal: he "failed to meet the administration's expectations"; the administration "would like the Woodbury Girls' Basketball program to move in a different direction"; and his "leadership style, coaching philosophy, conduct, and coaching methods differ from the leadership style, coaching philosophy, conduct, and coaching methods that are desired by the administration." (Id. ¶¶ 80, 82.) The letter also stated the decision was "based on the results of a recent investigation" and "not based solely on parent complaints." (Id. ¶ 80.)

In April 2014, McGuire requested a hearing before the school board, and on May 8, he addressed the school board regarding his non-renewal. (Id. ¶¶ 84, 88.) He stated his non-renewal was based solely on parent complaints and presented 19 statements from players, parents, and coaches who also thought his non-renewal was based on parent complaints. (Id. ¶ 89.) The school board declined to reverse the non-renewal. (Id. ¶ 91.)

McGuire then commenced the instant action based on the non-renewal of his coaching contract. Defendants now move for judgment on the pleadings. The Motion has been fully briefed, arguments were heard on October 29, and the Motion is now ripe for disposition.

**STANDARD OF DECISION**

A court reviews a Rule 12(c) motion for judgment on the pleadings under the same standard that governs a Rule 12(b)(6) motion to dismiss. Ashley Cnty., Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009). To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). The complaint need not contain detailed factual allegations, but it must contain "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 555.

For a judgment on the pleadings, the moving party must clearly establish that no material issues of fact exist and it is entitled to judgment as a matter of law. Lion Oil Co., Inc. v. Tosco Corp., 90 F.3d 268, 270 (8th Cir. 1996). The Court must accept all well-pleaded facts by the non-moving party as true, but it need not accept legal conclusions. Brown v. Medtronic, Inc., 628 F.3d 451, 459 (8th Cir. 2010) (citing Twombly, 550 U.S. at 556). It must also draw all reasonable inferences from the pleadings in favor of the non-moving party. Id.

## ANALYSIS

### I. McGuire Does Not Have a Protected Property Interest in the Renewal of His Coaching Contract.

McGuire argues that, because he had a property interest in the renewal of his season-long coaching contract, he was entitled to certain constitutional due process protections when his contract was terminated. Specifically, he claims he was entitled to, and did not receive, both a pre- and post-termination hearing, pursuant to Minnesota Statutes §§ 122A.58, 122A.40. At issue here is whether McGuire has a protected property interest in the renewal of his coaching contract.

To establish a deprivation of procedural due process in violation of the 14th Amendment, "a plaintiff must show that he has been deprived of a constitutionally protected life, liberty or property interest." Davenport v. Univ. of Ark. Bd. of Tr., 553 F.3d 1110, 1114 (8th Cir. 2009). When analyzing procedural-due-process claims, the Court first asks whether there is a constitutionally protected liberty or property interest. Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989). If such an interest exists, the

Court then asks whether the procedures used in the deprivation of that interest were constitutionally sufficient. Id.

Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Bd. of Regents of State Coll. v. Roth, 408 U.S. 564, 577 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Id.

Roth is instructive. Id. There, the Court held the appointment terms of a professor, who was hired for a fixed period of one academic year with a specific termination date, did not support a claim of entitlement to re-employment for the following year. Roth, 408 U.S. at 578. The Court reasoned that there was no protected property interest in re-employment because the professor's employment terminated on a specific date and no provisions were made for renewal. Id. Similarly, McGuire's coaching contract was for a specific time period beginning on November 18, 2013, and ending on March 22, 2014. (See Defs.' Mem. Ex. A.)[2] The coaching contract was "effective only for the [four month basketball season], unless further renewed." (Id.) His

[2] When ruling on a motion for judgment on the pleadings, a Court may consider materials that are necessarily embraced by the pleadings or incorporated by reference. See Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).

contract did not provide for renewal and explicitly stated it was not subject to continuing contract law.[3] (Id.)

Furthermore, McGuire's contract expired on its own terms. A contract that naturally expires is a legitimate basis for its non-renewal and is not an unlawful termination that gives rise to procedural-due-process protections. See Matter of Hahn, 386 N.W.2d 789, 790–91 (Minn. Ct. App. 1986) (holding when a statute provides that a coach's duties may be severed "as [the board] sees fit, for any reason," the *expiration* of a coaching contract meets the "any reason" standard) (emphasis added). Thus, in the Court's view, McGuire's expired contract did not give rise to a property interest.

Lacking a contractual property interest, McGuire argues that Minnesota Statutes § 122A.33, subd. 3 supplies the protected interest. The Minnesota legislature amended § 122A.33 in 2013 by adding the language emphasized in subdivision 3. The statute provides:

> **Subd. 2. Annual contract.** Notwithstanding section 122A.58, a person employed as a head varsity coach has an annual contract as a coach that the school board may or may not renew *as the board sees fit*.
>
> **Subd. 3. Notice of nonrenewal; opportunity to respond.** A school board that declines to renew the coaching contract of a licensed or nonlicensed head varsity coach must notify the coach within 14 days of that decision. If the coach requests reasons for not renewing the coaching contract, the board must give the coach its reasons in writing within ten days of

[3] See Minn. Stat. § 122A.40, subd. 7 (a non-probationary teacher may elect to have a continuing contract, after which point a pre-termination hearing is required, if requested); cf. Minn. Stat. § 122A.58, subd. 1 (an employee who holds athletic coach license from the commissioner of education is entitled to a pre-termination hearing, if requested); id., subd. 3 ("This section shall not apply to the termination of coaching duties . . . as a result of the nonrenewal or termination of the employee's contract . . . .").

> receiving the request. *The existence of parent complaints must not be the sole reason for a board not to renew a coaching contract*. Upon request, the board must provide the coach with a reasonable opportunity to respond to the reason at a board meeting. The hearing may be opened or closed at the election of the coach unless the board closes the meeting under section 13D.05, subdivision 2, to discuss private data.

Minn. Stat. § 122A.33, subds. 2, 3 (emphases added). Relying wholly on the language added to subdivision 3, McGuire argues that if the sole reason for non-renewal of a coaching contract is parental complaints, a coach is entitled to contract renewal and continued employment. It is this automatic-renewal that McGuire argues creates a property interest. Defendants, on the other hand, argue subdivision 3 creates no protected property interest because the statute is informational and does not set mandatory standards that limit the board's discretion.

For a statute to give rise to a property interest, it must contain "particularized substantive standards" and "mandatory language requiring the decision-makers to act in a certain way." Jennings v. Lombardi, 70 F.3d 994, 996 (8th Cir. 1995). The Eighth Circuit requires that both elements be present for a statute to create a protected property interest. Id. Because subdivision 3 does not contain substantive standards or mandatorily limit the school board's discretion, the Court finds that § 122A.33 does not give rise to a legitimate claim of continued employment.

Even after the statute was amended, subdivision 2 continues to provide the school board with broad discretion to not renew a coach's annual contract "as the board sees fit." Minn. Stat. § 122A.33, subd. 2; see also Hahn, 386 N.W.2d at 790–91. Defendants contend the amendment does not sufficiently limit the discretion of the school board

because it was included in subdivision 3, the "directory" part of the statute. If a statutory provision is "directory"—meaning informational and not mandatory—there is merely a duty to comply with it as nearly as practicable and a violation "does not result in the invalidity of the action taken." State v. Frisby, 108 N.W.2d 769, 773 (Minn. 1961).

In Christopher v. Windom Area School Board, the court found "the purpose of Minn. Stat. § 122A.33, subd. 3, is informational: to provide a coach notice of non-renewal of the position and the opportunity to respond. The statute does not allow a coach the right to otherwise challenge or overturn a school board decision." 781 N.W.2d 904, 910 (Minn. Ct. App. 2010). Accordingly, Christopher held that "any property interest that [the coach] had in his coaching job ended when his annual coaching contract ended, and any interest in a future appointment was a mere expectancy not subject to due process protection." Id.

While subdivision 3 was amended after Christopher, courts presume that a statute and the common law are consistent and that, if the legislature intended to enact a statute that is inconsistent with the common law, it would do so by express language or by necessary implication. Goodyear Tire & Rubber Co. v. Dynamic Air, Inc., 702 N.W.2d 237, 244 (Minn. 2005) (citing *In re* Shetsky, 60 N.W.2d 40, 45 (Minn. 1953)). The legislature included the unambiguous amendment in subdivision 3, knowing that this subdivision was informational. Further, no express language or necessary implication exists in the amendment that either abrogates the holding of Christopher or creates "particularized substantive standards" where there were none before. Subdivision 3 is

simply meant to give notice to the coach only of his non-renewal, and the amendment just added another item of which the school district must provide notification.

Therefore, because subdivision 3 is still merely informational, it does not sufficiently and mandatorily limit the discretion of the school board so as to create a property interest. As a result, the Court determines that McGuire has no constitutionally protected property interest underlying his procedural-due-process claims and grants Defendants' Motion.

## II. State Law Claims

McGuire also alleges several common law claims in Counts III through VI. Once the district court has dismissed all claims over which it had original jurisdiction, it may decline to exercise supplemental jurisdiction over the remaining state law claims. See 28 U.S.C. § 1367(c)(3). The Supreme Court stated that "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). Accordingly, this Court declines to exercise supplemental jurisdiction over Counts III through VI of McGuire's Second Amended Complaint, and these counts are dismissed without prejudice.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendants' Motion for Judgment on the Pleadings (Doc. No. 82) is **GRANTED**, and McGuire's federal claims (Counts I and II) are **DISMISSED WITH**

**PREJUDICE.** The Court **DECLINES** to exercise supplemental jurisdiction over McGuire's remaining state-law claims (Counts III, IV, V, and VI) and those claims are **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: November 13, 2015

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge